UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
CEMENT AND CONCRETE WORKERS
DISTRICT COUNCIL WELFARE FUND,
PENSION FUND, ANNUITY FUND,
EDUCATION AND TRAINING FUND AND          ORDER FOR ENTRY
OTHER FUNDS, SILVANA BALDO,              OF JUDGMENT
Administrator of the Cement and
Concrete Workers District Council        08-cv-1671 (KAM) (JJO)
Welfare Fund, Pension Fund and
Annuity Fund, and ALEXANDER J.
CASTALDI, President of the Cement
and Concrete Workers District
Council and Trustee of the
Education and Training Fund,

        Plaintiffs,

        -against-

BAROCO CONTRACTING CORPORATION
and NOEL BARRY,

        Defendants.
------------------------------------X

**KIYO A. MATSUMOTO, UNITED STATES DISTRICT JUDGE:**

        Plaintiffs Cement and Concrete Workers District

Council Welfare Fund, Pension Fund, Annuity Fund and Other Funds

(collectively, the "C&CWDC Funds"), and the Education and

Training Fund ("E&T Fund"), (collectively, the "Funds"), and

Silvana Baldo, as Administrator of the C&CWDC Funds and

Alexander J. Castaldi, as Trustee of the E&T Fund and as

President of the Cement and Concrete Workers District Council

(the "Union") commenced this action against Defendants Baroco

Contracting Corporation ("Baroco") and Noel Barry ("Barry")

pursuant to §§ 502 & 515 of the Employee Retirement Income

Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145
(2004), and § 301 of the Labor Management Relations Act of 1947
(the "Taft-Hartley Act"), 29 U.S.C. § 185 (2007), to recover
unpaid fringe benefit contributions with interest, unpaid dues
and amounts for checkoffs with interest, liquidated damages, and
reasonable attorneys' fees and costs.  Plaintiffs also seek an
order from the court requiring defendants' cooperation in
conducting an audit of Baroco's records from July 1, 2006
through the present and continuing, as well as a permanent
injunction directing defendants not to violate or breach the
parties' agreements in the future.

        Plaintiffs filed the complaint on April 23, 2008, and
served Baroco and Barry with copies of the summons and the
complaint on May 6 and 19, 2008, respectively.  Defendants
failed to appear, plead, file an answer, or otherwise defend
this action.  In accordance with Judge James Orenstein's August
8, 2008 order, (Docket Entry 4), plaintiffs moved for default on
September 2, 2008.  Pursuant to Federal Rule of Civil Procedure
55(a), the Clerk of the Court noted the default against
defendants on September 5, 2008.  On September 10, 2008, this
action was reassigned from Judge John Gleeson to the
undersigned.

        In support of their motion for default, plaintiffs
submitted three affirmations by their counsel, Joseph S. Kaming,

Esq., the affidavit of their auditor, Hany Kilada, the complaint and the audit results reports. (*See* Docket Entry 6, Affirmation of Joseph S. Kaming, dated September 2, 2008 ("9/2/08 Kaming Aff."), Affirmation of Attorneys' Service, dated September 2, 2008 ("Service Aff."), Affirmation of Joseph S. Kaming, dated November 4, 2008 ("11/4/08 Kaming Aff."), Affidavit of Hany Kilada, dated August 28, 2008 ("Kilada Aff.").)

Having considered all of plaintiffs' submissions, for the reasons set forth below, this court enters judgment in favor of plaintiffs and against defendants in the amount of $236,646.44, plus post-judgment interest at the rate prescribed by law through satisfaction of judgment. The court denies plaintiffs' requests for injunctive relief as moot.

**BACKGROUND**

The Funds are jointly administered, multi-employer, labor-management trust funds established and maintained pursuant to various collective bargaining agreements in accordance with ERISA, 29 U.S.C. §§ 1001, *et seq.*, and the Taft-Hartley Act, 29 U.S.C. §§ 185, *et seq.* (Compl. ¶ 4.) The Funds provide various fringe benefits to eligible employees from monetary contributions collected from employers who enter into collective bargaining agreements with the Union.

Defendants and the Union entered into a collective bargaining agreement (the "CBA") effective July 1, 2005 to June

30, 2008.  Pursuant to the CBA, defendants are obligated to submit remittance reports and pay the required monetary contributions to the Funds for every hour of work performed by each eligible employee.  Moreover, defendants must deduct dues and amounts regarding checkoffs ("checkoffs") to the Union for every hour of work performed by each eligible employee.  (Compl. ¶¶ 8-9 & Ex. A.)

Plaintiffs allege that defendants violated ERISA and the CBA by failing to make the required fringe benefit contributions to the Funds and to deduct dues and checkoffs for the Union from July 1, 2006 through May 31, 2008.  (*See* Docket Entry 6, Kilada Aff. & 6/15/07, 10/25/07 & 6/25/08 Audit Results Reports).

The court has reviewed the record and is satisfied that defendants were properly served with process on May 6 and 19, 2009 (Docket Entries 2 & 3, Affidavits of Service). Defendants Baroco and Barry were to appear and answer by May 26 and June 9, 2009 respectively, but both defendants failed to do so.

### DISCUSSION

Where "the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Chen v. Jenna Lane, Inc.*, 30 F.Supp.2d 622, 623 (S.D.N.Y.

1998)(quoting 10A Charles Alan Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure* § 2688 at 58-59 (3d ed. 1998)); *see Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *Geddes v. United Fin. Group,* 559 F.2d 557, 560 (9th Cir. 1977)).  A default judgment that is entered on the well-pleaded allegations in a complaint establishes a defendant's liability, *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854 (2d Cir. 1995)(citing *Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 69* (2d Cir. 1971), *rev'd on other grounds,* 409 U.S. 363 (1973)), and the sole remaining issue before the court is whether the plaintiff has provided adequate support for the relief it seeks. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d. 155, 158 (2d Cir. 1992) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974); Fed. R. Civ. P. 8(d)).  The Second Circuit permits the court to hold an inquest in lieu of an in-person hearing if the court has "ensured that there was a basis for the damages specified in the default judgment." *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young*, 109 F.3d 105, 111 (2d Cir. 1997) (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)); *cf*. Fed. R. Civ. P. 55(b)(2).

Pursuant to § 502(g) of ERISA, 29 U.S.C. § 1132(g)(2), the Funds may recover:

> (A)  the unpaid contributions;
> (B)  interest on the unpaid contributions;
> (C)  an amount equal to the greater of–
> > (i)   interest on the unpaid contributions, or
> > (ii)  liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A);
> (D)  reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E)  such other legal or equitable relief as the court deems appropriate.

Section 1132(g)(2) thus creates a mandatory right to unpaid contributions, interest on those unpaid contributions, liquidated damages, and attorney's fees "in any case in which a judgment in favor of the plan is awarded." *Trs. of the Bldg. Servs. 32B-J, Pension, Health and Annuity Funds v. Linden Realty Assocs.*, No. 94-cv-1358, 1995 WL 302454, at *7 (E.D.N.Y. May 8, 1995).

A fraction of the damages sought by plaintiffs relate to contributions that did not become due until after the complaint was filed on April 23, 2008. Federal Rule of Civil Procedure 54(c) generally limits a plaintiff's recovery to the relief sought in the complaint. Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.") However, "it does

6

not require plaintiff to have demanded a sum certain in order to recover on default," *Ames v. STAT Fire Suppression, Inc.*, No. 03-cv-6163, 227 F.R.D. 361, 362 (E.D.N.Y. May 25, 2005), and it is within a district court's "discretion to award ERISA damages that accrue during the pendency of an action." *Id.* (citing *Locher v. UNUM Life Ins. Co. of Am.,* 389 F.3d 288, 297-98 (2d Cir. 2004)).

In determining whether to grant such damages, the "central concern" of the courts has been the notice given to defendants. *Trs. of the Plumbers and Pipefitters Nat'l Pension Fund v. Daniel Weintraub & Assocs., Inc.*, No. 04-cv-2611, 2007 WL 4125453, at *5-*6 (E.D.N.Y. Nov. 16, 2007) (citing *Ames*, 227 F.R.D. at 362). Defendants have been given sufficient notice of the additional damages accrued during the pendency of the action, where, as here, (1) the complaint seeks an order requiring defendants to cooperate in an audit for the period July 1, 2006 through the "present *and continuing,*" (Compl., p. 16)(emphasis added); (2) the damages have been sufficiently established by affidavits and accompanying exhibits; and (3) defendants have been served with plaintiff's motion for default judgment and supplemental papers. (9/2/08 Kaming Aff. ¶ 5.) Accordingly, the court includes such damages in the calculations of the unpaid principal, interest and liquidated damages below.

Finally, pursuant to the CBA, the Union is entitled to recover the amounts owed for dues and checkoffs.

### 1. *Unpaid Fringe Benefit Contributions and Unpaid Dues and Checkoffs*

Defendants, by their default, have admitted that they failed to remit contributions, dues and checkoffs to the Union and the Funds required to be paid on behalf of their employees who are covered by the CBA. In support of their request to recover these unpaid contributions and dues and checkoffs, plaintiffs submitted: (1) three audit results reports for audit periods July 1, 2006 through March 31, 2007 (6/15/07 Audit Results Report), April 1, 2007 through September 30, 2007 (10/25/07 Audit Results Report), and October 1, 2007 through May 31, 2008 (6/25/08 Audit Results Report), (2) the Kilada Affidavit, and (3) the 11/04/08 Kaming Affirmation.

Based on these reports and affidavits, and as governed by the contribution and deduction rates established by the CBA, plaintiffs have adequately demonstrated that defendants owed the following amounts to the Funds and the Union:

| Total Amounts Owed to the Funds and the Union Attributable to Regular Work Hours (T. 1) | | | |
|---|---|---|---|
| Audit Results Report | Regular Hours | Rate | Regular Rate Subtotal |
| 6/15/2007 | 3,026 | $24.24 | $73,350.24 |
| 10/25/2007[1] | 3036/2942 | $24.24/$26.59 | $151,820.42 |
| 6/25/2008 | 5085.5 | $26.59 | $135,223.45 |
| **Total Amounts Owed for Regular Hours** | **6062/8027.5** | **$24.24/$26.59** | **$360,394.11** |

| Total Amounts Owed to the Funds and the Union Attributable to Overtime Hours(T. 1(a)) | | | |
|---|---|---|---|
| Audit Results Report | Overtime Hours | Overtime Rate | Overtime Subtotal |
| 6/15/2007 | 7 | $26.74 | $187.18 |
| 10/25/2007 | 77.5/32 | $26.74/$29.34 | $3,011.23 |
| 6/25/2008 | 79 | $29.34 | $2,317.86 |
| **Total Amounts Owed for Overtime Hours** | **84.5/111** | **$26.74/$29.34** | **$5,516.27** |

| Total Amounts Owed to the Funds and the Union (T. 1(b)) | | | |
|---|---|---|---|
| Audit Results Report | Overtime Subtotal | Regular Rate Subtotal | Total Sum for Audit Period |
| 6/15/2007 | $187.18 | $73,350.24 | $73,537.42 |
| 10/25/2007 | $3,011.23 | $151,820.42 | $154,831.65 |
| 6/25/2008 | $2,317.86 | $135,223.45 | $137,541.31 |
| **Total Owed to Funds and Union** | **$5,516.27** | **$360,394.11** | **$365,910.38** |

---

[1]     Regular and overtime rates increased from $24.24 to $26.59, and from $26.74 to $29.34, respectively, on July 1, 2007.  Accordingly, the subtotals for the regular hours and overtime hours reflect this increase.

To differentiate the amounts due to the Funds from the amounts due to the Union from the total amounts above, the amounts due to the Union for dues and checkoffs are calculated:

| Total Amounts Owed to the Union (T. 2) | | | |
|---|---|---|---|
| Audit Results Report Dated | Total Hours | Rate | Total Sum for Audit Period |
| 6/15/2007 | 3,033 | $2.05 | $6,217.65 |
| 10/25/2007 | 6,087.5 | $2.05 | $12,479.38 |
| 6/25/2008 | 5,164.5 | $2.05 | $10,587.23 |
| **Total Owed to Union** | **14,285** | **$2.05** | **$29,284.26** |

Then, the amounts owed to the Union for dues and checkoffs are subtracted from the total contribution amounts for each audit period (T. 1(b)) to arrive at the amounts due to the Funds for unpaid fringe benefit contributions:

| Total Contribution Amounts Owed to the Funds (T. 3) | | | |
|---|---|---|---|
| Audit Results Report Dated | Total Amount Owed (*See* T.1(b)) | Amount Owed to Union (*See* T.2) | Total Amount Owed to Funds |
| 6/15/2007 | $73,537.42 | ($6,217.65) | $67,319.77 |
| 10/25/2007 | $154,831.65 | ($12,479.38) | $142,352.27 |
| 6/25/2008 | $137,541.31 | ($10,587.23) | $126,954.08 |
| **Total Owed to Funds** | **$365,910.38** | **($29,284.26)** | **$336,626.12** |

However, defendant made the following payments which the court must consider in its calculation of damages:

| Total Payments Made by Defendant (T. 4) | |
|---|---|
| Date Payments Made | Total Amount Paid |
| July 1, 2007 | $65,500.00 |
| October 1, 2007 | $20,000.00 |
| December 1, 2007 | $33,540.32 |
| February 1, 2008 | $27,008.64 |
| August 1, 2008 | $43,075.86 |
| | **$189,124.82** |

As the specific audit periods to which the payments are applied are important to calculate the correct interest owed, the court applies the payments to the audit period within which they occurred: the July and October 2007 payments (*i.e.*, $85,500.00) apply to the 6/15/2007 Audit Results Report (July 1, 2006 through March 31, 2007 audit period); (2) the December 2007 and February 2008 payments (*i.e.*, $60,548.96) apply to the 10/25/2007 Audit Results Report (April 1, 2007 through September 30, 2007 audit period); and (3) the August 2008 payment (*i.e.*, $43,075.86) applies to the 6/25/2008 Audit Results Report (October 1, 2007 through May 31, 2008 audit period).

To calculate the principal, *i.e.* the total amount owed to the Union and the Funds respectively after payment, the ratio of the total contributions owed to the Union (T. 2) and the Funds (T. 3) for each audit period, respectively, to the total contribution amount owed (T. 1(b)) for each audit period must be determined: (1) 8.5% Union and 91.5% Funds for the 6/15/2007 Audit Results Report (audit period July 1, 2006 through March 31, 2007); (2) 8.1% Union and 91.9% Funds for the 10/25/2007 Audit Results Report (audit period April 1, 2007 through September 30, 2007); and (3) 7.7% Union and 92.3% Funds for the 6/25/2008 Audit Results Report (audit period October 1, 2007 through May 31, 2008). The ratios are then applied to the payment amounts for each audit period, *e.g.*, 91.5% of $85,500

for the 6/15/2007 Audit Results Report, 91.9% of $60,548.86 for
the 10/25/2007 Audit Results Report and etc.  The difference
between the proportionate payment amounts and the contribution
amounts owed to the Funds (T. 3) equals the principal amount
owed to the Funds for each audit results period:

| Principal Amount Owed to the Funds (T. 5) | | | | |
|---|---|---|---|---|
| Audit Results Report | Ratio (%) | Total Owed to Funds (*See* T. 3) | Payment Applied to the Funds | Principal Owed to Funds |
| 6/15/2007 | 91.5% | 67,319.77 | ($78,232.50) | ($10,912.73) |
| 10/25/2007 | 91.9% | 142,352.27 | ($55,644.49) | $86,707.78 |
| 6/25/2008 | 92.3% | 126,954.08 | ($39,759.02) | $87,195.06 |
| **Total** | | **336,626.12** | **($173,636.01)** | **$162,990.11** |

Similarly, the difference between the proportionate
payment amount and the total amounts owed to the Union equals
the principal amount owed to the Union:

| Principal Amount Owed to the Union (T. 6) | | | | |
|---|---|---|---|---|
| Audit Results Report | Ratio (%) | Total Owed to Union (*See* T. 2) | Payment Applied to the Union | Principal Owed to Union |
| 6/15/2007 | 8.5% | $6,217.65 | ($7,267.50) | ($1,049.85) |
| 10/25/2007 | 8.1% | $12,479.38 | ($4,904.47) | $7,574.91 |
| 6/25/2008 | 7.7% | $10,587.23 | ($3,316.84) | $7,270.39 |
| **Total** | | **$29,284.26** | **($15,488.81)** | **$13,795.45** |

Accordingly, after defendants' payments are applied,
plaintiffs are owed and the court awards $162,990.11 to the
Funds for unpaid fringe benefit contributions and $13,795.45 to
the Union for unpaid dues and checkoffs.

## 2. *Interest on Unpaid Fringe Benefit Contributions and Dues and Checkoffs*

Plaintiffs also seek to recover interest on unpaid fringe benefit contributions, as well as interest on unpaid dues and checkoffs. ERISA entitles plaintiffs to recover simple interest on unpaid contributions calculated at the rate specified in the CBA or, if none is stated, the rate prescribed by 26 U.S.C. § 1126. 29 U.S.C. § 1132(g)(2)(B). Here, the CBA states that the interest rate for unpaid fringe benefit contributions, as well as for union dues and checkoffs is eighteen percent *per annum* or 1.5% per month. (Compl. Ex. A, p. 46.) Based on the audit results reports, the 11/04/08 Kaming Affirmation, the Kilada Affidavit and the court's calculations above, defendant owes the following interest payments on the principal amount owed the Funds and the Union as of January 1, 2009:

| Interest Owed to the Funds (T. 7) | | | |
|---|---|---|---|
| Audit Results Report | Principal Owed to Funds (*See* T. 5) | Interest Rate (per month) | Interest Owed to Funds |
| 6/15/2007 | ($10,912.73) | 1.5% | $0.00 |
| 10/25/2007 | $ 75,795.05[2] | 1.5% | $17,053.89 |
| 6/25/2008 | $87,195.06 | 1.5% | $9,155.48 |
| **Total** | **$162,990.11** | **1.5%** | **$26,209.37** |

---

[2]     Principal owed to the Funds for this period, $86,707.78, is reduced by the amount defendant overpaid in the prior period, $10,912.73.

| Interest Owed to the Union (T. 8) | | | |
|---|---|---|---|
| Audit Results Report | Principal Owed to the Union (*See* T. 6) | Interest Rate (per month) | Interest Owed to Union |
| 6/15/2007 | ($1,049.85) | 1.5% | $0.00 |
| 10/25/2007 | $6,525.06[3] | 1.5% | $1,468.36 |
| 6/25/2008 | $7,270.39 | 1.5% | $763.39 |
| **Total** | **$13,619.93** | **1.5%** | **$2,231.75** |

Accordingly, the court awards plaintiffs $26,209.37 in interest on unpaid fringe benefit contributions and $2,231.75 in interest on unpaid union dues and checkoffs.

### 3. *Liquidated Damages*

Plaintiffs also seek liquidated damages on the unpaid fringe benefit contributions. ERISA provides that plaintiffs are entitled to liquidated damages in an amount equal to the greater of: (1) the interest on the unpaid contributions, or (2) an amount provided for under the CBA that is no greater than twenty percent of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). Here, the CBA provides for liquidated damages at a rate of 20 percent *per annum* or 1.67% per month of the unpaid principal. (Compl. Ex. A, p. 46.) Accordingly, liquidated damages on unpaid ERISA contributions for the three audit periods as of January 1, 2009 are as follows:

---

[3] Principal owed to the Union for this period, $7,574.91, is reduced by the amount defendant overpaid in the prior period, $1,049.85.

| Liquidated Damages Owed to the Funds(T. 9) | | | |
|---|---|---|---|
| Audit Results Report | Principal Owed to the Funds(*See* T. 5) | Liquidated Damages Rate (per month) | Liquidated Damages |
| 6/15/2007 | ($10,912.73) | 1.67% | $0.00 |
| 10/25/2007 | $75,795.05[4] | 1.67% | $18,986.66 |
| 6/25/2008 | $87,195.06 | 1.67% | $10,193.10 |
| **Total** | **$162,990.11** | **1.67%** | **$29,179.76** |

As the CBA liquidated damages amount,$29,179.76, is greater than the total interest on the unpaid contributions, $26,209.37, the court awards $29,179.76 to the Funds as liquidated damages.

### 4. *Attorney's Fees*

Pursuant to ERISA, the court may award reasonable attorney's fees and costs to the prevailing party. 29 U.S.C. § 1132(g)(2)(D). Here, plaintiffs seek to recover $1,750.00 for attorney's fees and related costs.

A determination of the appropriate award for attorney's fees rests soundly within the discretion of the district court. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "The party seeking reimbursement bears the burden of proving the reasonableness and necessity of hours spent and rates charged." *Morin v. Nu-Way Plastering Inc.*, No. 03-cv-405, 2005 WL 3470371, at *2 (E.D.N.Y. Dec. 19, 2005) (citing *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136

---

[4] *See supra* n. 2.

(2d Cir. 1983)). "In determining the reasonableness of attorney's fees . . . courts have generally used the lodestar method, in combination with the twelve factors articulated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1971)."[5] *Emerald Invs., LLC v. Porter Bridge Loan Co.*, No. 05-cv-1598, 2007 WL 1834507, at *4 (D. Conn. Jun. 25, 2007).

In *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 484 F.3d 162 (2d Cir. 2007), *amended*, 522 F.3d 182, 190 (2d Cir. 2008), the Second Circuit explained, however, that the better course is:

> for the district court, in exercising its considerable discretion, to bear in mind all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness

---

[5]    The twelve *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Emerald Invs.*, 2007 WL 1834507, at *4 n.10 (citing *Johnson*, 488 F.2d at 717-19).

of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."[6]

---

[6] The Second Circuit directs that the district court,

in determining what a reasonable, paying client would be willing to pay, [to] consider factors including, but not limited to, the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics, the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184.

*Arbor Hill*, 522 F.3d at 190. "After determining the amount of the presumptively reasonable fee, the court may use its discretion to increase or reduce the amount based on the particular circumstances of the case." *Emerald Invs.*, 2007 WL 1834507, at *5 (quoting *Chan v. Sung Yue Tung Corp.*, No. 03-cv-6048, 2007 WL 1373118, at *1 (S.D.N.Y. May 8, 2007)).

In addition, "the Supreme Court directed that district courts should use the prevailing market rates in the community, in calculating the lodestar, or what the Second Circuit is now calling the 'presumptively reasonable fee.'" *Lynch v. Town of Southampton*, No. 05-cv-4499, 2007 WL 1876501, at *12 (E.D.N.Y. Jun. 27, 2007) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). The community is defined as the district in which the court sits. *See Arbor Hill*, 522 F.3d at 190; *Lynch*, 2007 WL 1876501, at *12. "In this district, prevailing rates have ranged from . . . $200-$250 for senior associates and $100-$150 for junior associates." *Morin*, 2005 WL 3470371, at *2 (citing *Aiello v. Town of Brookhaven,* No. 94-cv-2622, 2005 WL 1397202, at *5 (E.D.N.Y. Jun. 13, 2005); *King v. JCS Enters.,* 325 F.Supp.2d 162, 169-70 (E.D.N.Y. 2004); *Duke v. County of Nassau,* No. 97-cv-1495, 2003 WL 23315463, at *3 (E.D.N.Y. Apr. 14, 2003)).

Although, a party seeking attorney's fees should "support that request with contemporaneous time records, that show 'for each attorney, the date, the hours expended, and the nature of the work done,'" *Cablevision Sys. v. Diaz*, No. 07-cv-4340, 2002 WL 31045855, at *5 (S.D.N.Y. Jul. 10, 2002) (quoting *Carey*, 711 F.2d at 1154), the court accepts plaintiffs' counsel, Joseph S. Kaming's affirmation as an adequate substitute, particularly in light of the modest fee requested. Moreover, Mr. Kaming's affirmation provides all the information generally provided in contemporaneous time records, namely, the date, the hours expended and the nature of the work performed. (*See* Docket Entry 6, Service Aff.) The court has reviewed the affirmation and finds that the hours requested by counsel are not "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

Plaintiffs seek a rate of $175.00 per hour for the ten hours of legal work expended by Joseph S. Kaming, Esq. in the prosecution of this action. (Service Aff. ¶ 3.) Joseph S. Kaming is a principal at the firm of Kaming & Kaming. (*Id.* at ¶ 2.) Applying the *Arbor Hill* and *Johnson* factors, having reviewed the time records submitted, and considering that actions for unpaid employee contributions under ERISA are fairly routine matters for employment and labor practitioners where a defendant has defaulted, the court finds that the hourly billing

rate of $175.00 by Mr. Kaming, who is a principal at his firm, is in line with "those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 896 n.11 (1984). Moreover, this rate seems exceedingly reasonable in light of the fact that it is considerably lower than what this district typically awards to senior associates for comparable work. *See Morin* 2005 WL 3470371, at *2 ("prevailing rates have ranged from . . . $200-$250 for senior associates and $100-$150 for junior associates.") Accordingly, the court grants plaintiffs' request for $1,750.00 in attorney's fees.

### 5. *Costs*

Plaintiffs also seek reimbursement for the costs incurred in the prosecution of the instant action. Courts generally award reasonable out-of-pocket expenses incidental to representation to the prevailing party. *Morin,* 2005 WL 3470371, at *4; *see also Reichman v. Bonsignore, Brignati & Mazzotta, P.C.,* 818 F.2d 278, 283 (2d Cir. 1987) (quoting *Northcross v. Bd. of Educ.,* 611 F.2d 624, 639 (6th Cir. 1979)). Here, at the behest of the court, plaintiffs have provided a statement of and documentation for the costs incurred, including a $350.00 filing fee and $140.00 for service of process. (Letter from Joseph S. Kaming, Esq. to the court, dated 12/3/08.) The court is satisfied that these costs represent reasonable and customary

litigation fees.  However, plaintiffs also seek twenty dollars in a statutory fee but provide no explanation or documentation to permit the court to assess what such a fee refers to and whether it is compensable; the court declines to include the twenty dollar fee in its award for costs.  (*Id.*)  Accordingly, the court awards $490.00 to plaintiffs for the reasonable costs incurred in the prosecution of this action.

### 6. *Injunctive Relief*

Finally, plaintiffs seek (1) an order "requiring [defendants] to cooperate and permit an audit of the books and records of [Baroco] for the period July 1, 2006 to present and continuing" and (2) a permanent injunction enjoining defendants from future violations and breaches of the CBA "for so long as it remains obligated to contribute to" the Funds and the Union. (Compl., p. 16.)  The CBA is effective from July 1, 2005 to June 30, 2008.  Accordingly, as the CBA has expired and defendants are no longer obligated to the Funds or the Union, the question with regard to the permanent injunction sought by plaintiffs is moot.

Moreover, the three audits conducted by plaintiffs cover the period from July 1, 2006 through May 31, 2008, i.e. the entire period (with the exception of the month of June) for which plaintiffs seek an order requiring defendants to cooperate

with an audit. Based on the completion of the three audits and the lack of any information from plaintiffs regarding whether employees covered by the CBA worked for defendants during June 2008 (thus, necessitating an audit), the court finds that the question with regard to this additional injunctive relief sought by plaintiffs has also expired.

**CONCLUSION**

For the foregoing reasons, the Clerk of the Court is respectfully directed to enter judgment in favor of plaintiffs against defendants in the amount of $236,646.44, consisting of $162,990.11 in outstanding unpaid contributions to the Funds, $26,209.37 in interest on these unpaid contributions, calculated at eighteen percent *per annum*, $29,179.76 in liquidated damages on unpaid contributions, calculated at twenty percent *per annum*, $13,795.45 in outstanding unpaid dues and amounts for checkoffs due to the union, $2,231.75 in interest on the dues and checkoffs, calculated at eighteen percent *per annum*, $1,750.00 in reasonable attorney's fees, $490.00 in costs, and post-judgment interest at the rate prescribed by law. Plaintiffs are hereby directed to serve copies of this order upon defendants

Barry and Baroco by certified mail and to file proof of service by ECF no later than April 6, 2009.

**SO ORDERED**
**Dated:**    Brooklyn, New York
                April 2, 2009

                                        _____/s/_____
                                        **KIYO A. MATSUMOTO**
                                        United States District Judge
                                        Eastern District of New York